# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| Pamela Harris, | CASE NO. 5:18 CV 00635 |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| v. | |
| | **MEMORANDUM OF OPINION** |
| City of Akron, | |
| | (Resolves Doc. 29) |
| Defendant. | |

Pending before the Court is a motion for summary judgment filed by Defendant City of Akron (the "City"). Plaintiff Pamela Harris has opposed the motion, and the City has replied. For the foregoing reasons, the City's motion for summary judgment is GRANTED.

## I. Facts & Procedure

The underlying facts that gave rise to this lawsuit are not in dispute. Plaintiff Pamela Harris, an African American female, first began employment as a temporary laborer for the City of Akron in November 1994 and was later rehired by the City as a seasonal or temporary semi-skilled laborer until she was laid off on March 11, 2017. Over the course of her temporary employment, Harris applied unsuccessfully for multiple permanent positions with the City. Ultimately, she was never hired as a permanent employee.

When filling such positions, the City conducts examinations as a way of measuring candidate eligibility. These examinations may be classified as either "open" or "promotional." Whereas open exams may be taken by any qualified candidate, promotional exams may only be taken by qualified employees already in the classified service with the City. Candidates are then ranked by exam score on what is called an "eligibility list."

In accordance with the "Rule of Three" of Section 108 of the Akron City Charter, the top three candidates on an eligibility list must be considered for each vacancy. Further, in the event that both an open and a promotional exam are given in an effort to fill a vacancy, two separate eligibility lists are created: an open list and a promotional list. When that happens, candidates on the promotional list are given priority over those on the open list.

A hiring notice for the first of the positions for which Harris applied, a permanent landscaper position, was posted on August 2, 2013. After having conducted open examinations for the position, the City compiled an eligibility list. Harris, the only female applicant on the list, ranked seventh out of eight. The City ultimately conducted four sets of interviews for the position. Though Harris was interviewed in the fourth set, the City opted to hire a male candidate, a Mr. Hodas, who had a higher eligibility score than Harris. In response, Harris filed a discrimination charge with the Ohio Civil Rights Commission on March 5, 2015, alleging that the City discriminated against her on the bases of race and gender when it did not hire her for the landscaper position.

Then on December 30, 2015, Harris applied for an Equipment Operator II position. She sat for the open examination for the vacancy thereafter on March 17, 2016 and was again ranked seventh on the eligibility list. However, the City also gave a promotional exam for this position and thus a promotional list was also compiled. The City ultimately filled the position from the promotional list, which consequently meant that no candidate on the open list (including Harris) was considered.

Finally, on February 27, 2017, the City's Deputy Mayor of Labor Relations, Randy Briggs, received a citizen complaint concerning an incident that happened at a GetGo gas station involving a City employee swearing and yelling at an employee of the gas station. Harris later

confirmed to City Highway Maintenance Division Superintendent Anthony Dolly that the incident had occurred and that she was present, but alleged that it was the other employee, Visa Bowen, who was the source of the disturbance. Bowen, despite denying her role in the disturbance, was laid off by the City.

Thereafter, Dolly was informed of and viewed cell phone photographs taken from the GetGo security camera system. The manager of the GetGo advised Dolly that the photographs identified Harris as the employee who caused the disturbance. Based on the photographs, the City concluded that Harris was indeed the employee who caused the disturbance. The City rescinded Bowen's termination and notified Harris, who maintained her innocence throughout, that she was being immediately laid off from her position as a temporary employee. The City also removed Harris from the season's re-employment eligibility list. In response, on October 10, 2017, Harris filed a charge of discrimination with the Equal Employment Opportunity Commission alleging retaliation and age discrimination.

Based upon the above-mentioned events, Harris filed suit against the City. Harris' amended complaint contains four causes of action. Harris claims that the above conduct constituted: race and/or gender discrimination in violation of Title VII 42 U.S.C. § 2000(e) ("Title VII"); age discrimination in violation of 29 U.S.C. § 623 ("ADEA"); retaliation in violation of Title VII; and discrimination under Ohio Revised Code Chapter 4112. The City has moved for summary judgment on all four claims, and the Court now resolves the parties' arguments.

## II. Legal Standard

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v.*

*Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. at 323. This is so that summary judgment can be used to dispose of claims and defenses which are factually unsupported. *Id.* at 324. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id.* The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250.

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex Corp. v. Catrett,* 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves . . ." *Id.* Rule 56(c) states, ". . . [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." A scintilla of evidence in favor of the nonmoving party is not sufficient.

**III. Law and Analysis**

    1. <u>The Landscaper Position: Race/Gender Discrimination (42 U.S.C.A. § 2000(e))</u>

Initially, the Court notes that Harris' response to the City's motion for summary judgment on these claims failed to designate specific facts demonstrating the existence of a genuine issue of material fact as required by Fed.R.Civ.P. 56(e). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Zetoun v. PNC Bank*, No. 1:13CV02431, 2015 WL 634697, *1 (N.D. Ohio Feb. 13, 2015).

"To avoid a grant of summary judgment on a Title VII Claim, a plaintiff must either provide direct evidence of discrimination or establish a prima facie case, which creates an inference of discrimination based on circumstantial evidence." *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 463 (6th Cir. 2003). A prima facie case of discrimination under Title VII for failure to hire requires that a plaintiff show: (1) that she is a member of a protected class; (2) the she applied for, and did not receive, a job; (3) that she was qualified for the job; and (4) that a similarly-situated person who was not in the plaintiff's protected class received the job. *Id*. If the plaintiff is able to establish a prima facie case, the burden of production then shifts to the employer to provide a legitimate, non-discriminatory reason for the employment action. *Brewer v. Cedar Lake Lodge, Inc.*, 243 Fed.Appx. 980, 986 (6th Cir. 2007).

In its motion for summary judgment, the City concedes that Harris can establish a prima facie case of discrimination under Title VII because: (1) she is an African-American female; (2) she applied for, and did not receive, the landscaper position; (3) she was placed on the eligibility list; and (4) a Caucasian male was hired for the position. As such, the burden shifts to the City who must then provide a legitimate, non-discriminatory reason for its employment action. In this case, the City has indeed provided a legitimate, non-discriminatory reason for its employment action, given that Hodas scored higher on the eligibility exam than Harris (87 to Harris' 73.7),

and had a higher total eligibility score (104.40 to Harris' 88.44). Thus, the burden then shifts to Harris to show pretext.

When the non-discriminatory reason for the hiring decision is based on the relative qualifications of the hired applicant and the plaintiff, relative qualifications will establish triable issues of fact as to pretext only where the evidence shows: (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as, if not better qualified than, the successful applicant, and the record contains "other probative evidence of discrimination." *Bartlett v. Gates*, 421 Fed.Appx. 485, 491 (6th Cir. 2010).

Regarding the landscaper position, Harris has not provided evidence sufficient to show that triable issues of fact existed as to pretext. Undisputed is the fact that, prior to being hired over Harris, Hodas was three times the top-scoring applicant for Landscaper positions with different City divisions, and in each of those instances the City chose to hire another candidate. As well, Harris does not dispute that Hodas scored higher than her on the examination when the two were in competition for the job. Rather, Harris contends that these two facts, taken together, indicate that test scores were "previously meaningless" to the City's evaluation process, and consequently, that the City's hiring of Hodas constituted "a newfound reliance on test scores" which could indicate pretext to a jury.

Harris' contention here represents an illogical leap and thus a conclusory assertion. That the City refrained from hiring Hodas twice-previously, despite his being the top-scoring applicant, and later hired him when again he was the top-scoring applicant, indicates at most that examination scores are but one of several factors the City considers when making hiring decisions. As it stands, Harris has provided zero evidence to support the assertion that test scores

were previously devoid of meaning in the City's hiring process. Consequently, that assertion, as well as Harris' further assertion that the City's hiring of Hodas constituted "a newfound reliance on test scores," are unsubstantiated and conclusory in nature.

Moreover, Harris has failed to provide any evidence indicating that she was a plainly superior candidate or that she was as qualified as, if not better qualified than, Hodas. Therefore, Harris has failed to provide evidence sufficient to indicate pretext in order to rebut the City's provided legitimate, non-discriminatory reason for its employment action. Accordingly, summary judgment on these claims is proper.

    2.    <u>The Equipment Operator Position: Race/Gender Discrimination (42 U.S.C.A. § 2000(e)) and Age Discrimination (29 U.S.C.A. § 623 and O.R.C. 4112.02)</u>

As a threshold matter, regarding her Age Discrimination claim, Harris argues that the City relied on inadmissible hearsay in support of its motion for summary judgment, given that the City offered the statements related to Randy Briggs' and Anthony Dolly's investigation of the GetGo incident to support its argument. However, the City did not offer the Briggs and Dolly statements to prove the truth of the matter asserted, but rather, to show that it had a legitimate, non-discriminatory purpose for terminating Harris' employment. "A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009). Accordingly, the statements related to the Dolly and Brigg's investigation do not constitute hearsay and may be considered by the Court.

Moreover, the Court notes that Harris did not respond to the City's motion for summary judgment on these claims. A party waives opposition to an argument by failing to address it in her response brief. *See Dage v. Time Warner Cable*, 395 F.Supp.2d 899, 921 (E.D. Tenn. 2013).

As such, the Court is not required to consider their merits and may grant judgment on these claims in favor of the City. *See Hicks v. Concorde Career Coll.*, 499 Fed. Appx. 484, 487 (6th Cir. 2011) ("The district court properly declined to consider the merits of this claim because Hicks failed to address it in either his response to the summary judgment motion or his response to Concorde's reply brief.").

3.  Retaliation Claim (42 U.S.C.A. § 2000(e))

To establish a prima facie case of retaliation under Title VII, Harris must demonstrate that: (1) she engaged in activity protected under Title VII; (2) her exercise of such protected activity was known by the employer; (3) the employer thereafter took an action that was materially adverse to the plaintiff; and (4) that a causal connection existed between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Thus, it follows that absent evidence of an employer's knowledge of a charge of discrimination, a plaintiff cannot establish a causal connection between the charge and the adverse employment action. *Cartwright v. Lockheed Martin Utility Services, Inc.*, 40 Fed.Appx. 147, 155 (6th Cir. 2002); *Kyle-Eiland v. Neff*, 408 Fed.Appx. 933, 942 (6th Circ. 2011) ("In this case, Kyle-Eiland submits no evidence to indicate that Neff ever knew about her OCRC filings[.]").

Here, Harris merely asserts that she had repeatedly complained to her coworkers and supervisors about alleged discrimination, and thus, she contends, that a genuine issue of material fact exists regarding whether the final authority had knowledge of Harris' complaints. In an effort to buttress this assertion, Harris states that "the City presents no evidence that it was not aware of her informal complaints." Initially, it must be noted that the burden is not on the City to prove a negative (lack of awareness). Rather, the burden is on Harris to establish a prima facie case.

Further, Harris' assertions are wholly unsubstantiated. "A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions." *Bradley v. Wal-Mart Stores East, LP*, 587 Fed. Appx. 863, 866 (6th Cir. 2014).

Yet, even assuming Harris had indeed vocalized such complaints and that her coworkers and supervisors had been aware of them, such a fact would at most indicate not the existence of a causal connection between protected activity and adverse employment action but a mere possibility of one. Given the foregoing, Harris has failed to establish a prima facie case of retaliation under Title VII, and thus, summary judgment on this claim is warranted.

## IV. Conclusion

Defendant City of Akron's motion for summary judgment is GRANTED. Judgment on the complaint is hereby entered in favor of Defendant.

IT IS SO ORDERED.

Dated: October 9, 2019                  */s/ John R. Adams*
                                                            JOHN R. ADAMS
                                                            U.S. DISTRICT JUDGE